UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KYLE FAULK & MILTON WOLFE, JR.                    CIVIL ACTION

VERSUS                                            NO: 12-1714 C/W 12-1717

TODD M. DUPLANTIS, ET AL.                         SECTION: "A" (3)

## ORDER AND REASONS

The following motions are before the Court: **Motions to Dismiss (Rec. Docs. 32,**

**33, & 34); Motions for Summary Judgment (Rec. Docs. 35 & 36)** filed by defendants

Todd Duplantis, individually and in his official capacity as Chief of Police of the Houma

Police Department, Michel Claudet, individually and in his official capacity as President of

Terrebonne Parish, and the Terrebonne Parish Consolidated Government ("TPCG").

Plaintiffs Kyle Faulk and Milton Wolfe, Jr. have filed their responses to each of the motions.

The motions, noticed for submission on July 17, 2013, are before the Court on the briefs

without oral argument.

## I.    BACKGROUND

Kyle Faulk, individually and on behalf of his two minor children Katie Marie Faulk

and Isabella Faulk, filed Civil Action 12-1714 pursuant to 42 U.S.C. § 1983 alleging First

Amendment retaliation by defendants Todd Duplantis, Michel Claudet, and the TPCG.

Milton Wolfe, Jr. filed Civil Action 12-1717 asserting claims similar to Faulk's.

The consolidated actions are scheduled to be tried to a jury on December 9, 2013.

(Rec. Doc. 55).

### *Common Allegations*

1

Faulk's and Wolfe's complaints stem from legislative action pertaining to Louisiana House Bill 106 ("HB106"). HB106 was a legislative instrument that sought to permanently remove the position of Houma Chief of Police from the state civil service system.[1] Faulk and Wolfe were employed by the Houma Police Department at all times pertinent.

On April 14, 2012, attorney for Plaintiffs herein became convinced that HB106 was violative of state law and could potentially violate a federal consent decree in place since 1977.[2] On April 19, 2012, Plaintiffs' counsel drafted an email explaining her concerns and she circulated that email throughout Terrebonne Parish. Within that email, counsel identified two minority captains of the Houma Police Department who she believed would be disadvantaged by HB106. According to counsel, these minority captains had more seniority than Todd Duplantis, the current Chief, and they were both eligible for the chief's position whereas Duplantis was not. Counsel opined that Parish President Michel Claudet had illegally placed Duplantis in the position of chief. One of the minority captains identified in counsel's email was Milton Wolfe, Jr., a plaintiff herein.

On May 10, 2012, HB106 was discussed during the Louisiana Senate Local and Municipal Affairs Committee. Plaintiff Faulk, who was a past president and founding

---

[1] HB 106 was introduced in the House by Representative Gordon E. Dove, Sr. of Terrebonne Parish. The purpose of the bill was to extend the sunset provision contained in La. R.S. § 33:2841.3(C). Section 33:2841.3 had been enacted in July 2009 to remove the position of Chief of Police for the City of Houma from the classified service to the unclassified service, and to vest the right of selection for the position in the parish president subject to the approval of the parish governing authority. The statute contained a sunset provision that rendered it null and void on July 1, 2012. La. R.S. § 33:2481.3(C) (2009). HB 106, which eventually became 2012 La. Act no. 572, was signed into law on June 7, 2012, and it simply extended the sunset provision to July 1, 2016. La. R.S. § 33:2481.3(C) (West Supp. 2013).

[2] That consent decree was dissolved as to the City of Houma's fire and police departments on November 15, 2012, by United States District Judge Lance M. Africk. (CA77-2040, Doc. No. 180).

member of the Houma Police Association, went to the committee meeting to speak against
HB106. Faulk had also voiced opposition to HB106 at a meeting of the Terrebonne Parish
Council held on April 30, 2012.

### Faulk's Allegations

Faulk is a sergeant with the Houma Police Department. Faulk alleges that on April 24,
2012, which was only two business days after counsel's email, Duplantis removed Faulk from
his position as recruiter and public information officer in administration. (Faulk's Complaint,
Rec .Doc. 1 at ¶ 20(a)). Duplantis then moved Faulk to a uniformed patrol car and made him
work the night shift. (*Id.*). Faulk claims that Duplantis, under the supervision of Claudet, took
these actions against him in retaliation for his protected speech about HB106.

Faulk's causes of action are based on theories of First Amendment retaliation,
respondeat superior, and constitutional violations inflicted through official custom and
policy. (*Id.* at 12, 14, & 15).

### Wolfe's Allegations

Wolfe is a captain in the Houma Police Department with over 28 years of service.
Wolfe alleges that on April 24, 2012, which was only two business days after counsel's email,
Duplantis removed Wolfe from his administrative position and placed him on a rotating
night shift. (Wolfe's Complaint, Rec .Doc. 1 at ¶ 19(a)). Wolfe contends that on May 7, 2012, a
supervisory note was placed in his personnel file without his knowledge. (*Id.* ¶ 19(e)). Then
on May 15, 2012, Duplantis wrote Wolfe up for filling out an incorrect timesheet. (*Id.* ¶ 19(g)).
On May 22, 2012, Duplantis wrote Wolfe up once again, this time for failing to show up for an

off-duty detail. (*Id.* at 19(h)).[3] Wolfe claims that Duplantis, under the supervision of Claudet, took these actions against him in retaliation for his protected speech about HB106 and because his name was specifically mentioned in counsel's email. (*Id.* at ¶ 20).

Wolfe's causes of action are based on theories of First Amendment retaliation, respondeat superior, and constitutional violations inflicted through official custom and policy. (*Id.* at 12, 14, & 15).

Defendants have now filed numerous dispositive motions, which the Court addresses in detail below.

## II.   DISCUSSION

### A.   *Governing Standards*

In the context of a motion to dismiss the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (*citing Tellabs, Inc. v. Makor Issues & Rights*, Ltd., 551 U.S. 308 (2007); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Lovick v. Ritemoney, Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004)). However, the foregoing tenet is inapplicable to legal conclusions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Thread-bare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* (*citing Bell Atlantic Corp. v. Twombly*, 550, U.S. 544, 555 (2007)).

The central issue in a Rule 12(b)(6) motion to dismiss is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief. *Gentilello v. Rege*, 627

---

[3] Wolfe does not dispute that the incidents on May 15 and 22, 2012, did in fact occur but rather suggests that Duplantis was looking for a reason to write him up, and that Duplantis was treating Wolfe more harshly than other officers committing similar infractions. (Wolfe's Complaint, Rec. Doc. 1 at ¶¶ 19(g), (h)).

F.3d 540, 544 (5th Cir. 2010) (*quoting Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). To avoid dismissal, a plaintiff must plead sufficient facts to "state a claim for relief that is plausible on its face." *Id.* (*quoting Iqbal*, 129 S. Ct. at 1949). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* (*quoting Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).  Legal conclusions must be supported by factual allegations. *Id.* (*quoting Iqbal*, 129 S. Ct. at 1950).

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (*citing Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (*citing Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (*citing* Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (*citing SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir.

1993)).

### B.   42 U.S.C. § 1983 First Amendment Retaliation Claims

To prove a claim of First Amendment retaliation, a plaintiff must establish that 1) he suffered an "adverse employment decision"; 2) his speech involved a matter of "public concern"; 3) his interest in commenting on matter of public concern outweighs the defendant's interest in promoting efficiency; and 4) his speech motivated the adverse employment decision. *Haverda v. Hays County*, No. 12-51008, 2013 WL 3753964, at *4 (5th Cir. July 17, 2013) (*quoting Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 601 (5th Cir. 2001)). Once a plaintiff has met his burden of showing that his protected speech was a substantial or motivating factor in the defendant's adverse employment decision, a defendant may still avoid liability by showing, by a preponderance of the evidence, that he would have taken the same adverse employment action even in the absence of protected speech. *Id.* (*citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). An employee can, however, refute that showing by presenting evidence that "his employer's ostensible explanation for the discharge is merely pretextual." *Id.* (*quoting Coughlin v. Lee*, 946 F.2d 1152, 1157 (5th Cir. 1991)). The movant for summary judgment in a First Amendment retaliation case faces a difficult burden because cases that involve determinations regarding intentions or motive are ill-suited for summary adjudication. *Id.* (*citing Beattie*, 254 F.2d at 600).

### 1.   Faulk v. Duplantis & Claudet (individually)

#### a.   The Parties' Positions

Faulk alleges that Duplantis retaliated against him for speaking out against HB106. The sole act of retaliation that Faulk alleges in his complaint is that on April 24, 2012,

Duplantis transferred him from his position as a recruiter and public information officer in administration to a uniformed car patrol working nights. (Faulk's Complaint, Rec .Doc. 1 at ¶ 20(a)). Faulk points out that this move occurred just two days after the missive that Plaintiff's counsel circulated around Terrebonne Parish, thereby suggesting that this email motivated Duplantis to transfer Faulk. (*Id.* at ¶ 20.).

Defendants move to dismiss Faulk's First Amendment retaliation claim arguing the obvious: That Faulk's allegations do not state a claim for First Amendment retaliation because 1) the protected speech that allegedly motived the transfer to the uniformed night patrol was not Faulk's speech but rather was Plaintiffs' counsel's speech, and therefore Faulk's First Amendment rights are not implicated; and 2) that while Faulk does allege two acts of protected speech of his own in conjunction with HB106, the transfer to uniformed patrol—again, the only pleaded "adverse employment decision"—occurred *prior to* those acts of protected speech. Further, Defendants argue that the transfer to uniformed night patrol, which involved no decrease in pay or rank, was not an "adverse employment decision" under the law of this circuit. (Rec. Doc.34, Defendants' Motion to Dismiss—Faulk).

In the event that the complaint survives dismissal at the pleading stage, Defendants have also moved for summary judgment on Faulk's First Amendment retaliation claim. Defendants again re-urge their contention that the transfer was not an "adverse employment decision," and that Faulk's characterization of it as such is nothing but Faulk's subjective belief that the night patrol car position was beneath him. Defendants also move for summary judgment on the issue of motivation for the transfer. Defendants contend that Duplantis has provided sound reasoning for his decision to transfer Faulk to the uniformed car patrol assignment. Finally, both Duplantis and Claudet move for summary judgment in their favor

on the defense of qualified immunity.

In opposition to the motion to dismiss, Faulk argues that Rule 8 does not require that he plead with specificity every act of retaliation that occurred, and therefore, his complaint is not subject to dismissal simply because the chronology of the sole act of retaliation that he does allege does not support his claim for First Amendment retaliation. In opposition to the motion for summary judgment, Faulk includes an affidavit citing other acts—acts not pleaded in his complaint—that he believes were retaliatory and that fit the chronology of his own acts of protected speech. On the issue of whether any acts of alleged retaliation were motivated by Faulk's protected speech, Faulk relies on the implications of the time-line of events contained in his affidavit, and the inferences of retaliation that can be drawn from the chronology of those events. (Rec. Doc. 44, Faulk's MSJ Opposition at 8).

Regarding whether Faulk suffered an "adverse employment decision," Faulk admits that the transfer was inter-positional in nature, and not a demotion, reduction in position, suspension, or dismissal.[4] (Rec. Doc. 45, Faulk's MTD Opposition at 4). Faulk argues, however, that his original position was more prestigious than uniform patrol, the working hours were better and more desirable, and the job was more interesting and fulfilling. (Rec. Doc. 44, Faulk's MSJ Opposition at 8). Faulk also contends that uniform patrol duty is

---

[4] Faulk doesn't just admit these aspects of the transfer, he *argues* them in response to Defendants' contention that state civil service rules required Faulk to exhaust his administrative remedies prior to filing this lawsuit. Faulk need not have tried so hard to refute that argument because it lacks merit as a matter of federal law. A plaintiff's ability to bring suit against a state actor under § 1983 for vindication of a federal right is not subject to state law rules of administrative exhaustion. *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 516 (1982). And state civil service classifications of the employment decision do not control whether or not it constitutes an adverse employment decision under federal law. *See Serna v. City of San Antonio*, 244 F.3d 479, 482-83 (5th Cir. 2001). Moreover, the state law immunities that Defendants invoke in their motions do not provide a defense to the federal claims because federal law governs the scope of a § 1983 claim. *See Howlett v. Rose*, 496 U.S. 356, 376 (1990).

universally considered a form of punishment within the department. (*Id.*).

### b.    Motion to Dismiss

Turning first to the motion to dismiss, Defendants correctly point out that Faulk cannot ground his retaliation claim on Plaintiffs' counsel's April 19, 2012 email because that email does not implicate Faulk's First Amendment rights. Nonetheless, in his complaint Faulk specifically alleged that this email motivated Duplantis to transfer him to night patrol. Faulk only alleges one specific instance of his own speech regarding HB106—his appearance at the senate committee meeting on May 10, 2012—but that occurred after the transfer.

Rule 8 may require only "a short and plain statement of the claim" in order to avoid dismissal under Rule 12(b)(6), but that statement must nonetheless demonstrate that the pleader is entitled to relief. Fed. R. Civ. Pro. 8(a)(2). Rule 8(a) may forgive a plaintiff's lack of factual particularity when pleading his case but the plaintiff must nonetheless plead all of the essential elements of his case, and he must include enough factual detail to give the claim facial plausibility. *See Gen. Elec. Cap. Corp. v. Posey*, 415 F.3d 391, 396-97 (5th Cir. 2005).

For this reason, the Court cannot agree with Faulk's contention that Rule 8(a) is so relaxed that he need not plead the specific acts of retaliation upon which he bases his claim for relief. Defendants cannot defend a retaliation case that behaves as a moving target. The only act of retaliation that Faulk pleaded was the transfer to the uniformed night patrol car position. Faulk's claim for First Amendment retaliation is therefore limited to that specific employment action, and he cannot expand his complaint with new causes of action by submitting an affidavit that describes other acts that he believes to be retaliatory.[5]

---

[5] The Court is persuaded that none of the other allegedly retaliatory acts mentioned in Faulk's affidavit would be actionable as "adverse employment decisions" anyway. But those other acts, while not actionable on their own, are not irrelevant because they could constitute

The more convincing argument for Faulk, and the one that the Court assumes he was trying to articulate in his opposition to the motion to dismiss, is that his First Amendment retaliation claim need not be dismissed based on Faulk's failure to plead with particularity every instance prior to the transfer when he spoke out in opposition to HB106. Faulk alleged that he was retaliated against, *i.e.*, transferred to night patrol, because of his protected speech about HB106. (Rec. Doc. 1, Faulk's Complaint ¶ 20). Rule 8(a)(2)'s requirement of a short and plain statement is satisfied notwithstanding the lack of factual specificity as to when Faulk spoke out.[6]

### c.     *Motion for Summary Judgment-Adverse Employment Decision*

Defendants' next argument is that under the law of this circuit the transfer to the night patrol does not constitute an adverse employment decision. Adverse employment decisions can include discharges, demotions, refusals to hire, refusals to promote, and reprimands. *Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir. 1999) (*citing Benningfield v. City of Houston*, 157 F.3d 375 (5th Cir. 1998); *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997); *Southard v. Tex. Bd. of Crim. Just.*, 114 F.3d 539, 555 (5th Cir. 1997); *Pierce v. Tex. Dept. of Crim. Just.*, 37 F.3d 1146, 1149 (5th Cir. 1994)). The law in this circuit recognizes that a transfer may under certain circumstances constitute an adverse employment action even where it does not carry with it a decrease in pay. *Serna*, 244 F.3d at 482. A transfer is not

---

circumstantial evidence that helps Faulk to prove that retaliation motivated the transfer to the night patrol position.

[6] Another factor militating against the Court granting Defendants any relief under Rule 12(b)(6) is that they waited until nearly the eve of trial to complain about pleading deficiencies that were immediately apparent from the face complaint. Rule 12(b)(6) specifically states that a motion challenging the complaint based on the failure of the factual allegations to state a claim must be filed before the answer is filed lest the defense be waived.

actionable when its adverseness is based solely on the plaintiff's preference for one position over the other. *See id.* But under certain circumstances the plaintiff can demonstrate that a transfer is so deleterious as to make it in essence a demotion. *Id.* Thus, where the plaintiff is transferred into a job that is less prestigious, less interesting, subject to less attractive work hours, and generally considered as a form of "punishment" in that particular workplace, a transfer can be actionable as an "adverse employment decision." *See, e.g., Forsyth v. City of Dallas*, 91 F.3d 769, 774 (5th Cir. 1996); *Click v. Copeland*, 970 F.2d 106, 110 (5th Cir. 1992).

Faulk has clearly created an issue of fact under the law of this circuit as to whether the transfer to the night patrol was in essence a demotion, and therefore constitutes an "adverse employment decision," versus an ordinary transfer. Faulk submitted the deposition testimony of numerous other employees of the Houma Police Department, all of whom opined that in the department transfer to the night patrol was viewed as punishment. Faulk contends that the position that he had before the transfer was objectively better than the night patrol position because he went from working an 8:00 a.m. to 4:30 p.m. desk job to working twelve hour shifts that alternate between days and nights. (Rec. Doc. 44-3, Exh. A to Faulk's MSJ Opposition). Faulk also contends that the night patrol position has impacted his ability to work outside details and therefore to earn extra money. The law in the circuit could not be clearer in that the transfer need not be accompanied by a reduction in compensation. Defendants are not entitled to either dismissal or summary judgment on the issue of whether the transfer constituted an "adverse employment decision."

### d.      *Motion for Summary Judgment-Retaliatory Motive*

Duplantis, in his capacity as Chief of Police, is the individual who made the decision to transfer Faulk to the night patrol, and he is the individual who carried out that decision.

Duplantis moves for summary judgment on the motivation issue arguing that he has provided sound reasoning for transferring Faulk into the night car patrol assignment. (Rec. Doc. 35-1, Defendants' MSJ—Faulk at 7). In support of his motion for summary judgment Duplantis submitted an affidavit. The affidavit does not mention or allude to Duplantis's reasons for transferring Faulk. (Rec. Doc. 35-3, Exh. A to Defendants' MSJ—Faulk). Defendants have submitted as Exhibit C to their motion an untitled two-page deposition excerpt that the Court surmises to be Duplantis's testimony. (Rec. Doc. 35-3, Exh. C to Defendants' MSJ—Faulk). This testimony excerpt briefly states why Duplantis moved another employee out of the night patrol position that Faulk ultimately came to occupy.

Faulk has created an issue of fact as to whether his protected speech regarding HB106 was a motivating factor in the decision to transfer him to the uniformed night patrol. But nothing in the evidence of record adequately explains why Duplantis made the decision to transfer Faulk into the uniformed night patrol. This case requires a determination regarding motive or intention and only the jury can make this determination. Duplantis is not entitled to summary judgment on Faulk's First Amendment retaliation claim.

### e.    *Motion for Summary Judgment-Qualified Immunity*

Duplantis contends that he is entitled to qualified immunity because a police chief in his position would have no way of knowing that transferring one sergeant in and one sergeant out of car patrol would amount to an unlawful act. (Rec. Doc. 35-1, Defendants' MSJ—Faulk at 11).

A qualified immunity defense requires two points of analysis: 1) Did the defendant violate the plaintiff's constitutional rights, and 2) if a violation occurred then were the defendant's actions objectively unreasonable in light of clearly established law at the time of

the conduct in question? *Whittington v. Maxwell*, 455 Fed. Appx. 450, 456 (5th Cir. 2011)

(unpublished) (*quoting Freeman v. Gore*, 483 F.3d 404, 410 (5th Cir. 2007)).

Of course, simply transferring one sergeant into the position of another is not an

unlawful act in and of itself. But if the transfer constitutes an "adverse employment decision,"

and if it was carried out in retaliation for engaging in protected speech, then it was unlawful.

A reasonable officer in Duplantis's position should have known that if he took an adverse

employment action in retaliation against an employee for exercising his First Amendments

rights then that would be unlawful and subject him to liability. It is beyond cavil that the law

in this circuit was clearly established on this point when the alleged retaliatory act occurred

in this case. *Click*, 970 F.2d at 111. Duplantis is not entitled to summary judgment on his

defense of qualified immunity.

In sum, for all of the foregoing reasons, the motion to dismiss and for summary

judgment is DENIED as to the First Amendment retaliation claim asserted against Duplantis

in his personal capacity.

### f.      *Faulk's Claims Against Claudet*

Faulk fails to allege a claim against Claudet under federal law in his personal capacity.

The sole allegation with respect to Claudet vis à vis the First Amendment retaliation claim is

that Duplantis was acting under the supervision of Claudet when he retaliated against Faulk

by transferring him to the night patrol. (Rec. Doc. 1, Faulk Complaint ¶ 20). Assuming the

truth of this allegation, the law is well-settled in that § 1983 does not allow for supervisory

liability based on principles of respondeat superior. *See, e.g., Estate of Davis v. City of N.*

*Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005).

But even if the allegations in the complaint were sufficient to state a claim against

Claudet individually, the record on summary judgment makes clear that Faulk cannot establish a First Amendment claim against Claudet in his personal capacity. Faulk has provided the testimony of several members of the Houma Police Department that he believes makes abundantly clear that Duplantis acted upon the advice and permission of Michel Claudet in retaliating against him. (Rec. Doc. 44, Faulk's MSJ Opposition at 9).

To the contrary, the deposition transcripts indicate that several employees believed that another employee, Ms. Wedgeworth, had overheard a conversation between Duplantis and Claudet regarding retaliation. But Ms. Wedgeworth, who was apparently Duplantis's secretary, clarified that what those other employees were referring to was her discomfiture with Claudet calling Pat Theriot, the current president of the Houma Police Association, and attempting to discourage him from going before the legislature concerning HB106. (Rec. Doc. 44-13, Exh. K to Faulk's MSJ Opposition). Wedgeworth testified that Duplantis said something to the effect that Claudet would support whatever he did but she assumed that this conversation involved Theriot. (*Id.*).

The record is simply devoid of evidence sufficient to create an issue of fact regarding liability against Claudet in his personal capacity for a violation of Faulk's First Amendment rights. Claudet is entitled to judgment as a matter of law on Faulk's claim of First Amendment retaliation.

### 2. *Wolfe v. Duplantis & Claudet (individually)*

#### a. *The Parties' Positions*

Wolfe's complaint is nearly identical to Faulk's in that he is asserting a claim for First Amendment retaliation based on his opposition to HB106. In contrast to Faulk who voiced his opposition to HB106 in a very public manner, Wolfe alleges that he communicated his

opposition to his fellow officers, and that the views of the Houma Police Association expressed collectively included his viewpoint. (Rec. Doc. 1, Wolfe's Complaint ¶ 20). Similar to Faulk, Wolfe contends that he was retaliated against after Plaintiff's counsel circulated the April 19, 2012 email, which specifically named Wolfe as being a minority who could be adversely affected by HB106. (*Id.*). Wolfe alleges several acts that he contends were retaliatory but Wolfe's chief complaint is that Duplantis removed him from an 8: 00 a.m. to 4:00 p.m. / Monday through Friday shift, and placed him on a rotating night shift with another captain. (*Id.* ¶ 19(a)). Additionally, Wolfe alleges that Duplantis put a supervisory note in his personnel file, and issued two Written Records of Counsel, for errors that Wolfe does not dispute occurred. (*Id.* ¶¶ 19(e), (g), (h)).

Defendants move for dismissal and summary judgment on Wolfe's claims. Defendants argue that Wolfe's conversations to fellow officers, which is the only speech alleged, is not "protected speech" for purposes of a First Amendment retaliation claim. Defendants also argue that the complaint fails to allege and the evidence fails to establish that Duplantis even knew about Wolfe's conversations with his co-workers regarding HB106, thereby creating a failure on the issue of causation/motivation. Finally, Defendants argue that none of the alleged acts of retaliation constitute an "adverse employment decision" under federal law.

In opposition to the motions, Wolfe argues that his speech to fellow officers regarding HB106 was protected speech and that the retaliatory acts that he alleges were "adverse employment decisions."

### b.    *Motion for Summary Judgment*

Assuming *arguendo* that Wolfe successfully pleaded a First Amendment retaliation claim, the evidence of record demonstrates that Wolfe cannot prove his claim. Wolfe cannot

meet his initial burden of showing that *his own* protected speech was a substantial or motivating factor in any acts taken against him.[7] With respect to the speech at issue, Wolfe states in his affidavit that he "engaged in protected speech by informing members of the department, members of the public, and members of the Houma Police Association of [his] opposition to HB106."[8] (Rec. Doc. 43-2, Exh. A-1 to Wolfe's MSJ Opposition ¶ 2). Two crucial pieces of information are missing from Wolfe's case. First, there is no indication of when Wolfe made these statements so they very well could have been made after the adverse actions were taken against him. And unlike Faulk, who was very high profile in the cause and demonstrated a consistent and continuous course of public opposition to HB106, the only speech regarding HB106 that Wolfe can claim are the private discussions with his co-workers. Second, and perhaps even more fatal to his claim, nothing in the record suggests that Duplantis knew about the private conversations that Wolfe had with co-workers when he expressed his opposition to HB106.

Wolfe's deposition testimony only serves to further demonstrate that he cannot prove a causal connection between any "protected speech" and any acts that Duplantis allegedly took against him. Wolfe testified that he believed that it was Plaintiffs' counsel's email—an email that cited Wolfe as an employee who would be adversely affected by HB106 because of his minority status—that prompted Duplantis to retaliate. (Rec. Doc. 36-3, Defendants MSJ—Wolfe at 17). Wolfe admits that he never talked to Duplantis about HB106 but that

---

[7] The Court assumes without deciding that Wolfe's conversations with his co-workers were "protected speech" and that the acts taken against him were "adverse employment actions."

[8] Wolfe's opposition also refers to an Exhibit A that was intended to be his deposition but that exhibit was not included with the motion as filed. (Rec. Doc. 43, Wolfe's MSJ Opposition at 4 n.7). Defendants, however, included the relevant portions of Wolfe's deposition with their filing so the Court used that copy.

word simply gets around the office. (*Id.* at 21). In fact, Wolfe could cite to no evidence at all

that would indicate that Duplantis knew about his position with respect to HB106. (*Id.* at 22).

In other words, Wolfe is simply surmising that someone probably told Duplantis about

Wolfe's personal opinions regarding HB106.

In sum, Duplantis is entitled to judgment as a matter of law on Wolfe's First

Amendment retaliation claim under 42 U.S.C. § 1983.

### c.      *Wolfe's Claims Against Claudet*

For the reasons explained above, Wolfe cannot establish a violation of any right.

Claudet is entitled to judgment as a matter of law on Wolfe's claim of First Amendment

retaliation.

### C.      *42 U.S.C. § 1983 Official Custom and Policy Claims*

### a.      *Faulk*

Official capacity suits against an individual are really suits against the governmental

entity that the official serves. *Goodman v. Harris Cnty.*, 571 F.3d 388, 396 (5th Cir. 2009).

Because no party has alluded to the specific governmental entity implicated by the official

capacity claims against Duplantis and Claudet, the Court will assume that TPCG, which is

already a named defendant, is the proper entity. Therefore, the analysis regarding the official

capacity claims against Duplantis and Claudet, and the analysis regarding the claims against

TPCG, collapse into a single *Monell* inquiry.

It is well-settled that a city or municipality is not liable under § 1983 on the theory of

respondeat superior. *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (2009) (*citing*

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). A plaintiff seeking to impose

liability on a municipality under § 1983 must show that there was either an official policy or

an unofficial custom, adopted by the municipality, that was the moving force behind the claimed constitutional violation. *Duvall v. Dallas Cnty*, 631 F.3d 203, 209 (5th Cir. 2011) (*citing Monell*, 436 U.S. at 694). A municipality is almost never liable for an isolated unconstitutional act on the part of an employee but rather is liable only for acts directly attributable to it "through some official action or imprimatur." *Peterson*, 588 F.3d at 847 (*quoting Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). Official policy, which establishes potential liability for a municipality, can exist not only as a formal written policy statement but also in the form of widespread practice that is "so common and well-settled as to constitute a custom that fairly represents municipal policy." *Id.* (*quoting Piotrowski*, 237 F.3d at 579). A policy or custom is official only "when it results from the decision or acquiescence of the municipal officer or body with 'final policy making authority' over the subject matter of the offending policy." *Id.* (*quoting Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). There is no "de facto" final policy making authority so the plaintiff must show that the policy was promulgated by the municipality's policymaker. *Id.* (*quoting Gros v. City of Grand Prairie*, 181 F.3d 613, 616 n.2 (5th Cir. 1999)). State law will always be the sole determinate of which official or body has the responsibility for making law or setting policy in any given area of a local government's business. *Gros*, 181 F.3d at 616 (*quoting City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988)).

Duplantis, the governmental actor who effected the employment decision that forms the basis of Faulk's First Amendment retaliation claim, is not a final policymaker for TPCG. Faulk's claims against Duplantis in his official capacity are therefore dismissed.

Claudet, as Parish President, is clearly a final policy maker for TPCG. *See* Parish of Terrebonne Home Rule Charter, art. III, § 3-01, <u>et seq.</u> But as explained above, the record is

devoid of any evidence that suggests that Claudet was personally involved in the decision to transfer Faulk to the uniformed night patrol position.

Moreover, Plaintiffs never concretely identify an actual TPCG policy that calls for First Amendment retaliation against parish employees. Instead, Faulk seems to be relying on the "widespread practice" application of policy or custom. (Rec. Doc. 1, Faulk's Complaint ¶ 22). But the only other instance of First Amendment retaliation suggested by Faulk is Wolfe's case, which again fails on its proof. Faulk cites to the experiences of retired Captain Greg Hood but the allegation is that Faulk's case is reminiscent of Hood's case because Duplantis assigned him to the night shift in order to force him out of the department. (*Id.* ¶ 20(c)). Nothing in Hood's deposition testimony suggests that he believed that Duplantis reassigned him to night patrol as retaliation for exercising First Amendment rights, or more importantly that Claudet, as final policy maker, was involved. (Rec. Doc. 44-8, Exh. F to Faulk's MSJ Opposition). Even if Faulk has established that Duplantis has a policy of punishing officers by assigning them to the night patrol, this does not help him to reach TPCG in his case because Duplantis is not the final policy maker for TPCG and the only policy of relevance is one of retaliating for exercising First Amendment rights. Faulk has failed to create an issue of fact as to the question of whether his constitutional injury, should he prevail in proving one, was caused by an official policy or custom of TPCG. Claudet in his official capacity and TPCG are entitled to judgment as a matter of law.

### b.   *Wolfe*

Duplantis in his official capacity, Claudet in his official capacity, and TPCG are entitled to judgment as a matter of law on Wolfe's claims because Wolfe has not demonstrated the denial of any federal constitutional right. *See Zarnow v. City of Wichita*

*Falls*, 614 F.3d 161, 166 (5th Cir. 2010).

####     D.      *Respondeat Superior / Vicarious Liability*

Plaintiffs concede that § 1983 does not provide for liability under the theory of respondeat superior. (Rec. Doc. 47, Plaintiffs' MTD Opposition at 10). All claims asserted under this theory of liability are therefore dismissed.

####     E.      *Due Process Claims*

Faulk and Wolfe allege that they were denied due process by the passage of HB106 because they can no longer compete based on the merits of their work for the chief's position should they decide to do so. (Rec. Doc. 1, Faulk's and Wolfe's Complaints at ¶ 31; Faulk's Complaint ¶ 21).

A claim for procedural due process requires state action that deprives an individual of a property interest employing procedures that were unconstitutional. *McClure v. Biesenbach*, 355 Fed. Appx. 800, 805 (5th Cir. 2009) (unpublished) (*citing Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).

The due process clause contains a substantive component that bars certain arbitrary, wrongful government actions "regardless of the fairness of the procedures used to implement them." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (*quoting Daniels v. Williams*, 474 U.S. 327, 331 (1986)). Analysis of a substantive due process claim requires the court to focus on the allegations of the complaint to determine how the plaintiff describes the constitutional right at stake and what the municipality did to deprive the plaintiff of that right. *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). The due process clause precludes the state from depriving individuals of property without due process of law but it does not impose an affirmative obligation on the state to ensure that those interests do not come to harm through

other means. *Id.* (*quoting DeShaney v. Winnebago County Dept. of Soc. Servs.*, 489 U.S. 189, 195 (1989)). A government employee alleging a due process claim in connection with an employment action must also assert a property interest in continued employment. *Holder v. Knight*, 155 Fed. Appx. 735, 739 (5th Cir. 2005) (*citing Cabrol v. Town of Youngsville*, 106 F.3d 101, 105 (5th Cir. 1997)).

As the Court appreciates Plaintiffs' due process claims, Plaintiffs believe that the enactment of La. R.S. § 33:2481.3, and the more recent passage of HB106, violated their right to procedural due process because the legislature enacted § 33:2481.3 in contravention of the state constitution and the state rules of civil service. Even if this is true, Plaintiffs fail to make any type of convincing argument as to how TPCG, or any defendant in this case for that matter, would be liable for the passage of an act of the state legislature, which was later approved by the state's executive. Even if Claudet personally lobbied Representative Dove to present HB106 to the legislature, neither Claudet nor TPCG violated any procedural due process right owed to Plaintiffs. Plaintiffs' belief that they can hold any of the local defendants liable for exercising their own First Amendment rights in supporting acts that other parties enacted into state law, is not supported by any law of which this Court is aware and Plaintiffs cite to none. Moreover, the Court knows of no authority to suggest that a plaintiff in either Faulk's or Wolfe's position suffers a federal procedural due process injury when a state law violates the state constitution.

The basis for Plaintiffs' substantive due process claim is even less clear because the only rights that they allege were implicated by the passage of HB106 are state law rights. Plaintiffs believe that they possess a constitutionally protected right to compete for the position of chief but they offer no legal authority for that assertion. The sin qua non of any

due process claim is a property right but Plaintiffs have not shown that they had any property rights in the chief's position. Their statements regarding their rights with respect to this position are conclusory, speculative, and uttered without citation to the specific state law that vested some property right in them. But assuming arguendo that Plaintiffs somehow did have a property right with respect to the chief's position, they fail to make the connection between that property right, an act of the Louisiana Legislature that allegedly deprived them of that property right, and the local defendants named in this lawsuit.

Defendants are entitled to judgment as a matter of law on Plaintiffs' due process claims.

## III.   CONCLUSION

Based on the foregoing, the only claim that remains for trial on December 9, 2013, is Faulk's claim of First Amendment retaliation based on Duplantis's decision to transfer Faulk to the uniformed night patrol. The case will proceed against Duplantis in his personal capacity only. All claims asserted against Claudet and TPCG, and the official capacity claims against Duplantis are DISMISSED.

Wolfe's complaint is DISMISSED in is entirety.

Faulk recognizes that both this Court and the magistrate judge have had difficulty identifying the exact nature of the causes of action asserted. (Rec. Doc. 47, Plaintiffs' MTD Opposition at 1). The only causes of action that Faulk alleged were for First Amendment retaliation and due process, under 42 U.S.C. § 1983, with concomitant *Monell* claims asserted against the municipality based on those alleged violations. The difficulty in identifying the exact nature of the causes of action stems from the discursive montage of allegations regarding HB106, Duplantis's qualifications to be chief, the state legislature's action in changing the law

regarding the chief's position, and civil service rules, none of which have any implications for any federal right. Plaintiffs are therefore forewarned that issues pertaining to Duplantis's appointment as chief, including the legality of his appointment under state law, and the validity of La. R.S. § 33:2481.3 will not be tried in this case because they are irrelevant to Faulks's claim under 42 U.S.C. § 1983.

Accordingly;

**IT IS ORDERED** that the **Motion to Dismiss Faulk's Complaint (Rec. Doc. 34) is DENIED**;

**IT IS FURTHER ORDERED** that the **Motion for Summary Judgment on Faulk's First Amendment Retaliation and Custom/Policy Claims (Rec. Doc. 35)** is **GRANTED IN PART AND DENIED IN PART** as explained above;

**IT IS FURTHER ORDERED** that the **Motion for Summary Judgment on Wolfe's First Amendment Retaliation and Custom/Policy Claims (Rec. Doc. 36)** is **GRANTED**;

**IT IS FURTHER ORDERED** that the **Motion to Dismiss Wolfe's Complaint (Rec. Doc. 33)** is **DENIED AS MOOT**;

**IT IS FURTHER ORDERED** that the **Motion to Dismiss (Rec. Doc. 32)** filed by Defendants is **GRANTED**;

**IT IS FURTHER ORDERED** that in light of the foregoing, the Clerk is to issue a judgment in Civil Action 12-1717 in favor of Defendants **DISMISSING** Wolfe's complaint in its entirety **WITH PREJUDICE**;

**IT IS FURTHER ORDERED** that in light of the foregoing, the Clerk is to **DISMISS** the complaint in Civil Action 12-1714 as to all defendants except Todd M. Duplantis in his

individual capacity, with the final judgment in that case being issued following the jury trial

on the merits.

August 16, 2013

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE

24