UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KYLE FAULK                                                              CIVIL ACTION

VERSUS                                                                  NO: 12-1714

TODD M. DUPLANTIS`                                                      SECTION: "A" (3)

## ORDER AND REASONS

The following motions are before the Court: **Motion for New Trial, or in the Alternative, Remittitur (Rec. Docs. 107)** filed by Defendant, Todd Duplantis; **Motion for Attorney's Fees (Rec. Doc. 110)** filed by Plaintiff, Kyle Faulk. The motions are opposed. The motions, scheduled for submission on September 10 & 24, 2014, are before the Court on the briefs without oral argument.

On July 16, 2014, the jury returned a verdict in favor of Faulk on his First Amendment retaliation claim against Todd M. Duplantis. (Verdict Form, Rec. Doc. 100-1). The jury concluded that Duplantis transferred Faulk to uniformed car patrol in retaliation for engaging in protected speech, and that the transfer constituted an adverse employment action. The jury then awarded Faulk $75,000 in compensatory damages and $275,000 in punitive damages. (*Id.* at 2, 3). Duplantis is liable for these amounts in his personal capacity.

Duplantis now moves for a new trial on the compensatory and punitive damage awards.[1]

---

[1] Although the motion primarily challenges the propriety of the damage awards, Duplantis at times also alludes to error with the jury's other factual findings, such as whether the transfer was an adverse employment action and whether the transfer was actually retaliatory in nature. To the extent that Duplantis challenges these liability determinations, the Court is not persuaded

1

Following a jury trial, Rule 59(a)(1)(A) of the Federal Rules of Civil Procedure allows the court discretion to grant a new trial when the jury's damage award was so excessive and against the great weight of the evidence as to indicate bias or prejudice by the jury. *Brunnemann v. Terra Int'l, Inc.*, 975 F.2d 175, 177-78 (5th Cir. 1992); *Harang v. Schwartz*, —F.3d—, No. 13-0058, 2014 WL 4084939 (E.D. La. Aug. 15, 2014). The court must first determine whether a new trial or remittitur is the appropriate remedy. When a jury verdict results from passion or prejudice, the appropriate remedy is a new trial, not remittitur. *Id.* (citing *Wells v. Dallas Indep. Sch. Dist.*, 793 F.2d 679, 683 (5th Cir. 1986)). Damage awards that are merely excessive or so large as to appear contrary to right reason, however, are subject to remittitur, not a new trial. *Id.* This circuit follows the "maximum recovery rule" for remittitur such that the verdict must be reduced to the maximum amount that the jury could properly have awarded. *Id.* (quoting *Hansen v. Johns-Manville Prods. Corp.*, 734 F.2d 1036 (5th Cir. 1984)).

But the jury's award of damages will not be set aside unless it is "entirely disproportionate to the injury sustained." *Rhines v. Salinas Constr. Technol., Ltd.*, 574 Fed. Appx. 362, 368 (5th Cir. 2014) (unpublished) (quoting *Flanagan v. Aaron E. Henry Cmty. Health Servs. Ctr.*, 876 F.2d 1231, 1236 (5th Cir. 1989)). The jury's verdict is afforded great deference such that the court must refrain from substituting its opinion in place of the jury's. *Brown v. Miss. Dep't of Health*, 256 Fed. Appx. 710, 711 (5th Cir. 2007) (unpublished) (quoting *Bryant v. Compass Grp. USA, Inc.*, 413 F.3d 471, 475 (5th Cir. 2005)). The decision to grant or

---

that the jury's conclusions were contrary to the great weight of the evidence. The evidence presented at trial was sufficient to establish that the transfer was functionally equivalent to a demotion, and that Duplantis effected the transfer for retaliatory reasons. The jury was free to discount Duplantis's testimony to the contrary.

deny a motion for new trial is within the sound discretion of the trial court. *Harang*, 2014 WL 4084939, at *13 (citing *Pryor v. Trane Co., 138 F.3d 1024*, 1016 (5th Cir. 1998)).

### Compensatory Damages

Duplantis contends that the $75,000 compensatory damage award was against the great weight of the evidence. Duplantis urges the Court to either order a new trial or to remit the award to $20,000.

At the outset, the Court notes that the entirety of the $75,000 compensatory damage award in this case was for non-pecuniary damages.[2] An award of non-pecuniary damages requires evidence of a specific, discernable injury to the plaintiff's emotional state, with evidence to support the nature and extent of the harm. *Brown*, 256 Fed. Appx. at 711 (quoting *Brady v. Fort Bend Cnty.*, 145 F.3d 691, 718 (5th Cir. 1998)). Evidence to corroborate the plaintiff's testimony is not an absolute requirement so long as the plaintiff's testimony is "particularized and extensive enough." *Hitt v. Connell*, 301 F.3d 240, 250-51 (5th Cir. 2002) (quoting *Brady*, 145 F.3d at 720). "[H]urt feelings, anger and frustration are part of life," and are not types of emotional harm that can support an award of damages. *Id.* (quoting *Patterson v. P.H.P. Health. Corp.*, 90 F.3d 927, 940 (5th Cir. 1996)).

Faulk testified that prior to the transfer, he worked days from 8:00 a.m. to 4:00 p.m., and had weekends and holidays off. After the transfer, he worked 12 hours shifts, which included work on weekends and holidays. According to Faulk, the transfer to shift work adversely affected his custody schedule with his two daughters. The girls could no longer

---

[2] Faulk did not suffer any financial injury whatsoever as a result of the transfer. Faulk stresses that civil service regulations protected his pay and benefits. But that is of no moment because Faulk can only recover the damages that he actually sustained, regardless of the reasons that prevented the damage from being worse.

spend nights with him and he could no longer spend time with the girls individually, which Faulk found preferable in light of the girls' differing interests. Faulk explained that his new work schedule so disrupted the joint custody arrangement that he had with his former wife that they went to court over the matter.[3] Faulk noted that he had to endure the strained custody situation for about two years. Faulk had been offered a foot patrol position that would have cured the problem with his custody schedule but he turned it down because he thought that the assignment was beneath his current position. Faulk testified that it was difficult to engage in other relationships because with his new schedule—he was either always working or with his daughters.

Faulk also testified that he sought medical treatment on one occasion because he thought that he was having a heart attack.[4] Faulk also resorted to taking sleeping pills because of the erratic schedule accompanying the shift work.

The case of *Hitt v. Connell*, *supra*, is instructive. Like this case, *Hitt* was a § 1983 First Amendment retaliation case. Hitt had been fired from his position as a deputy constable because of his protected labor union activities. The jury returned a $300,000 compensatory damage award, $224,000 of which constituted non-pecuniary damages for mental anguish, loss of job satisfaction and prestige, and embarrassment. *Hitt*, 301 F. 3d at 250. Hitt offered

---

[3] Faulk did not offer evidence of any attorney's fees or other costs incurred in conjunction with that legal proceeding.

[4] Faulk attempted to testify that the treating physician believed that Faulk's symptoms were related to stress from his predicament at work but the Court sustained Duplantis's objection to that blatant hearsay. Faulk attempted to admit medical records from the incident that he recounted but the Court granted Duplantis's motion in limine to exclude them. (Rec. Doc. 88). The Court has re-reviewed the excluded records (Rec. Doc. 83 Exhibit P-9), and notes that they contain no medical opinion suggesting that Faulk's complaints were causally-related to job stress. The records do indicate other pre-existing health issues.

uncorroborated testimony about how emotionally trying the termination had been; how embarrassed he was about town by the whole incident; and how he was depressed over having lost his job. *Id.* at 251. The Fifth Circuit remitted the entire non-pecuniary damage award after concluding that Hitt's uncorroborated testimony was too vague and non-specific. *Id.* The court explained that the evidence necessary to support a non-pecuniary damage award must establish a specific and discernable injury to the plaintiff's mental state. *Id.* at 250. Hitt's uncorroborated testimony of mental distress with no evidence of physical manifestations of stress was insufficient to meet this standard. *Id.*

*Forsyth v. City of Dallas*, 91 F.3d 769 (5th Cir. 1996), is another instructive decision that represents the other end of the damages spectrum. *Forsyth* was also a First Amendment retaliation case involving police officers. The plaintiffs (Kirks and Forsyth) were two Dallas police officers who were transferred to night uniformed patrol after they spoke out about potentially unlawful conduct by their superiors in the department. The jury awarded mental anguish damages of $50,000 and $75,000 to Kirks and Forsyth, respectively.[5] *Id.* at 773. These awards were based on the plaintiffs' own testimony. Kirks testified that he had suffered depression, sleeplessness, and marital problems. *Id.* at 774. Forsyth testified that she suffered depression, weight loss, intestinal troubles, and marital problems; that she had been sent home from work because of her depression, and that she had to consult a psychologist. *Id.* The Fifth Circuit upheld the awards on appeal, recognizing that judgments regarding non-economic damages are "notoriously variable," and that the court had no basis to disturb the jury's verdict. *Id.*

---

[5] These awards are for past mental anguish only. The *Forsyth* jury also awarded the plaintiffs future mental anguish damages, 91 F.3d at 773, but Faulk presented no evidence to support the inference that he should be awarded future mental anguish damages.

Faulk argues that his trial testimony establishes that he suffered essentially the same emotional harm as Kirks, who received a $50,000 award almost 20 years ago. (Rec. Doc. 108, Opposition at 7). But the nature of Faulk's evidence was also not vastly different from what was offered in *Hitt*, a more recent case, where the Fifth Circuit remitted the entire non-pecuniary damage award. That decision is not unique.[6]

The Court is persuaded that $30,000 is the maximum recovery that the jury could have reasonably awarded Faulk. Faulk's testimony was completely uncorroborated, and while that is not in and of itself problematic, Faulk's complaints were essentially those of inconvenience, albeit accompanied by stress. Faulk rejected the opportunity to mitigate his damages by taking another position that would have cured the custody situation. The award of $75,000 to Faulk for past mental anguish is excessive as a matter of law in light of the evidence presented at trial. Duplantis does not suggest that the jury's verdict was the result of passion or prejudice, and the Court likewise sees no evidence of such a problem. The appropriate remedy for the excessive award is therefore remittitur. The Court will remit the compensatory damage award to $30,000, which comprises over a $1000 a month in compensation for the two years of shift work that Faulk endured. If Faulk refuses to remit then the Court will order a new trial on damages.

### *Punitive Damages*

Duplantis contends that the $275,000 exemplary damage award was both

---

[6] *See, e.g., Brown*, 256 Fed. Appx at 711. In *Brown*, the plaintiff testified that his employer's discrimination caused him mental anguish, emotional suffering, and stress, that resulted in marital difficulties, and aggravation to his already-existing kidney stones. The Fifth Circuit remitted the entire non-pecuniary damage award ($25,000) after concluding that the plaintiff's evidence was insufficient to support any award at all. *Id.* Although unpublished cases do not constitute precedent in this circuit, *see* Fifth Circuit Rule 47.5.4, the results of those cases are very real and instructive to other litigants.

constitutionally invalid and against the great weight of the evidence. Duplantis urges the Court to remit the award completely or to $5,000 at the most.

The jury concluded that Duplantis acted with malice or wilfulness or with callous and reckless indifference to the safety or rights of others when he retaliated against Faulk. (Verdict Form, Rec. Doc. 100-1 at 3). In 2012, a police chief in Duplantis's position would have known that he could not take retaliatory action against an officer for the exercise of his First Amendment rights. Duplantis need not have acted maliciously, but only wilfully and with indifference to the rights of others. (Jury Instructions at 5). The jury was instructed that the purpose of punitive damages is to discourage similar conduct in the future and to punish the defendant for his past conduct. (*Id.*). The jury's conclusion that punitive damages were appropriate under the circumstances was not against the great weight of the evidence. The Court therefore cannot remit the award completely.

The Court does agree, however, that an award of $275,000 is excessive in light of the evidence presented at trial. Faulk attempts to analogize his case to *Forsyth, supra*, where Forsyth received $125,000 in punitive damages from each of two defendants under § 1983. The *Forsyth* plaintiffs had been transferred for reporting unlawful activity that not only violated other citizens' constitutional rights to privacy but compromised a sensitive undercover investigation. *See Forsyth*, 91 F.3d at 772. *Forsyth* not only demonstrates that the award of $275,000 was grossly excessive in Faulk's case, but *Forsyth*'s far more egregious facts distinguish it from this case. Duplantis's conduct violated Faulk's clearly established rights but his conduct was neither shocking nor reprehensible and there was no evidence of malice or danger to others. Moreover, there was no evidence offered at trial to suggest that an award of $275,000 is necessary to effectively punish Duplantis in light of his personal

resources. And a $275,000 personal judgment against a police officer is well beyond what is necessary to deter either Duplantis or others in his position from engaging in similar conduct. The Court will remit the punitive damages award to $15,000. If Faulk refuses to remit then the Court will order a new trial on damages.

The motion for attorneys fees is dismissed as premature.[7]

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for New Trial, or in the Alternative, Remittitur (Rec. Docs. 107)** filed by Defendant, Todd Duplantis is **GRANTED**. The Court remits the compensatory damage award to $30,000 and the punitive damage award to $15,000. On or before **December 31, 2014**, Faulk must either file into the record an acceptance of the remittitur or a notice of his intent to retry the damages portion of this case;[8]

**IT IS ORDERED** that the **Motion for Attorney's Fees (Rec. Doc. 110)** filed by Plaintiff, Kyle Faulk is **DENIED** without prejudice as premature.

December 9, 2014

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE

Clerk: Copy via ECF to Magistrate Judge Knowles

---

[7] The attorney's fee motion is premature but the Court advises that fees of $159,000 based on an hourly rate of $350.00 will not be awarded. And of course the figure of $140,000 based on a contingency fee calculation is no longer valid in light of the remittitur.

[8] The Court strongly urges the parties to attempt once again to settle this matter. At the parties' request, the Court will extend the deadline for Faulk to file his notice regarding the remittitur/new trial if the parties need additional time to engage in settlement negotiations.